**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

TROY CAMPBELL,

                              Plaintiff,                    No. 9:16-CV-0004
                                                           (MAD/CFH)
          v.


JOSEPH PRUE and DAVID
HALLENBECK,

                              Defendants.

---

**APPEARANCES:**                          **OF COUNSEL:**

Troy Campbell
13-A-0601
Orleans Correctional Facility
3531 Gaines Basin Road
Albion, New York 14411
Plaintiff pro se

Attorney General for the                  KEITH J. STARLIN, ESQ.
   State of New York                       Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for defendants

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se Troy Campbell ("plaintiff"), an inmate who was, at all relevant times,

in the custody of the New York Department of Corrections and Community Supervision

("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that Superintendent

---

        [1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to
28 U.S.C. § 636(b) and N.D.N.Y. L.R. 72.3(c).

("Supt.") David Hallenbeck and Corrections Officer ("C.O.") Joseph Prue – who, at all relevant times, were employed at Hale Creek Correctional Facility ("Hale Creek") – violated his constitutional rights under the Eighth Amendment.  <u>See</u> Dkt. No. 17 ("Sec. Am. Compl.").    Presently pending before the Court is defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Dkt. No. 48.  Plaintiff opposed defendants' motion,[2] and defendants filed a reply.  Dkt. Nos. 51, 52.  For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

### A. Plaintiff's Recitation of the Facts

The facts are related herein in the light most favorable to plaintiff as the nonmoving party.  <u>See</u> subsection II.A. <u>infra</u>.  Plaintiff alleges that Supt. Hallenbeck and C.O. Prue were aware that non-party inmate Deandre Moore was a "violent person and . . . affiliated with the Bloods."  Sec. Am. Compl. at 3.  Plaintiff informed Supt. Hallenbeck and C.O. Prue "numerous times" that inmate Moore threatened and harassed him, and that inmate Moore stated that "he was about to cut [plaintiff]."  <u>Id.</u>  Supt. Hallenbeck and C.O. Prue told plaintiff that "everything [was] going to be alright" and that nothing would happen to him. <u>Id.</u>  At an unspecified time, inmate Moore assaulted plaintiff with a knife.  <u>Id.</u> at 5.  Plaintiff sustained injuries to the left side of his neck, and received fourteen stitches.  <u>Id.</u>

---

[2] On October 2, 2017, plaintiff filed his response in opposition to plaintiff's motion for summary judgment.  Dkt. No. 51.  The undersigned observes that plaintiff titled his motion "Notice of Motion for Summary Judgment with L.R. 56.2 Notice."  <u>See id.</u> at 1.  Based on the substance of the response, the undersigned does not interpret this document as a cross-motion for summary judgment, and believes that plaintiff attempted to file a response in opposition.

## B. Defendants' Recitation of the Facts

In support of their Motion for Summary Judgment, defendants filed a Statement of Material Facts.[3]  Plaintiff transferred to Hale Creek on June 1, 2015.  Dkt. No. 48-1 ¶ 70. On September 10, 2015, inmate Moore interrupted plaintiff's conversation with another non-party inmate in the inmate cafeteria, and told plaintiff to "shut the F up," and called him a "pussy." Id. ¶¶ 14, 16.  Plaintiff called inmate Moore a "pussy," and inmate Moore stated, "we're going to see who's a pussy when we get back to the dorm." Id. ¶ 16.  Prior to September 10, 2015, plaintiff had not have any confrontations or arguments with inmate Moore.  Id. ¶¶ 74, 75.  Plaintiff contends that on his return to the dorm, he spoke with a non-party DOCCS official named "Soto," and asked him to inform Supt. Hallenbeck about his verbal argument with inmate Moore.  Id. ¶ 19.  At his deposition, plaintiff testified that he informed Sergeant ("Sgt.") Soto that during the verbal argument, inmate Moore stated

---

[3]  Local Rule 7.1(a)(3) states:

> Summary Judgment Motions
>
> Any motion for summary judgment shall contain a Statement of Material Facts.  The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue. Each fact listed shall set forth a specific citation to the record where the fact is established. The record for purposes of the Statement of Material Facts includes the pleadings, depositions, answers to interrogatories, admissions and affidavits.
>
> The opposing party shall file a response to the Statement of Material Facts. The non-movant's response shall mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs. Each denial shall set forth a specific citation to the record where the factual issue arises. The non-movant's response may also set forth any additional material facts that the non-movant contends are in dispute. Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.

N.D.N.Y. L.R. 7.1(a)(3).

that "he was going to cut [plaintiff]," and he asked Sgt. Soto to get Supt. Hallenbeck so that plaintiff could speak with him. Id. ¶ 21.

After leaving the inmate cafeteria, plaintiff and inmate Moore returned to their shared housing unit. Dkt. No. 48-1 ¶ 23. Although they walked within the same group of inmates, plaintiff and inmate Moore did not interact. Id. ¶ 24. On that day, C.O. Prue was stationed at the main door leading into the C-2 housing unit. Id. ¶ 25. Plaintiff contends that he informed C.O. Prue that inmate Moore stated that he was "going to cut [him]," and "about the situation" with inmate Moore. Id. ¶ 26. Plaintiff claims that C.O. Prue told him "don't worry about it," "[a]in't nothing going to happen," "these guys want to go home – do their program and go home." Id. ¶ 27. Plaintiff testified at his deposition that he did not have any further conversation with C.O. Prue. Id. ¶ 28. After plaintiff returned to his cube, he observed C.O. Prue in the C-2 housing unit dayroom/television room looking at the television. Id. ¶ 30. Soon after, inmate Moore called out to plaintiff from the doorway of the housing unit's restroom. Id. ¶ 32. Plaintiff voluntarily left his cube, and entered the restroom with inmate Moore. Id. ¶ 33. Plaintiff was in the bathroom with inmate Moore for approximately three seconds when inmate Moore cut him with a sharp object. Id. ¶ 35. Another inmate immediately intervened and placed himself between plaintiff and inmate Moore, at which time plaintiff hit inmate Moore with a garbage can lid. Id. ¶ 36.

After the altercation, plaintiff remained in the inmate restroom and wiped the blood away from his cut. Dkt. No. 48-1 ¶ 38. Plaintiff then attended his afternoon Alcohol and Substance Abuse Treatment ("ASAT") program class without informing C.O. Prue or any other Hale Creek official about the altercation, his injuries, or that he wanted protection

from inmate Moore.  Id. ¶¶ 39, 41.  The ASAT teacher questioned why plaintiff had band aids on his neck, and plaintiff informed the teacher that he had been hurt playing basketball.  Id. ¶ 42.  Plaintiff did not mention the altercation with inmate Moore, or that he had been cut by a knife.  Id.  Inmate Moore attended the same ASAT class as plaintiff, and plaintiff chose to move his seat during the class to sit with inmate Moore.  Id. ¶¶ 43, 44.  Plaintiff and inmate Moore spoke with each other without any conflict.  Id. ¶ 45.  The ASAT teacher eventually separated plaintiff and inmate Moore once she noticed that they were not talking about school work.  Id. ¶ 46.  Plaintiff then asked for permission to use the bathroom and speak with a corrections officer.  Id. ¶ 47.  Plaintiff spoke with non-party C.O. Borner, and informed him that he had scratched himself on a locker in his dorm and did not know he had a visible scratch until other inmates told him.  Id. ¶ 48.  Plaintiff did not inform C.O. Borner of the altercation with inmate Moore.  Id. ¶ 49.  C.O. Borner called a DOCCS nurse and Sgt. Soto to report the injury, and sent plaintiff to the infirmary.  Id. ¶ 50.  Plaintiff told DOCCS officials at the infirmary that he had cut himself on a locker inside his cube.  Id. ¶ 51.  Plaintiff signed an "Inmate Injury Report," which stated that "[t]he cause of my cut that my locker inside my cube cut me when I was going for my net bag.  I cut myself on the locker inside my cube but everything good I'm alright."  Id. ¶ 52.  DOCCS officials sent plaintiff to Albany Medical Center for further medical treatment.  Id. ¶ 53.  Hale Creek began an investigation into the source of the cut, and interviewed plaintiff about what had happened.  Id. ¶ 54.  During the interview, plaintiff maintained to Sgt. Soto that he had cut himself opening a locker, but after further questioning, plaintiff admitted that he had been involved in an altercation with inmate Moore.  Id. ¶ 56.  DOCCS officials also

interviewed inmate Moore, and discovered that he had sustained superficial injuries in the September 10, 2015 altercation. Id. ¶ 57.

Pursuant to the investigation, plaintiff submitted a "Free Will Statement," which made no mention that he had ever requested protection from inmate Moore prior to the September 10, 2015 altercation or had informed anyone of an alleged threat to him by inmate Moore. Dkt. No. 48-1 ¶ 59. Plaintiff and inmate Moore were both charged with violating DOCCS inmate rules, and plaintiff was issued a misbehavior report charging him with fighting (100.13). Id. ¶¶ 60, 61. On September 11, 2015, plaintiff was transferred to Marcy Correctional Facility where he remained until February 4, 2016. Id. ¶¶ 63, 64. On September 16, 2015, a Tier III Superintendent's hearing was held at Marcy regarding the charges stemming from the September 10, 2015 altercation. Id. ¶ 65. During plaintiff's testimony, he did not mention that he told Sgt. Soto, C.O. Prue, Supt. Hallenbeck, or any other DOCCS official about the September 10, 2015 lunchtime verbal argument with inmate Moore, or any alleged threats by inmate Moore. Id. ¶ 67. He testified that he did not expect inmate Moore to attack him on September 10, 2015, did not mention inmate Moore's alleged threat to "cut" or injure him, and testified that when he entered the bathroom, he did not believe that there was going to be any physical violence. Id. ¶ 68. At the conclusion of the hearing, the hearing officer found plaintiff guilty and sentenced him to seven days of pre-hearing confinement that he had already served, as well as mandatory counseling. Id. ¶ 69.

## II. Discussion[4]

### A. Legal Standards

### 1. Summary Judgment Standard

"A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   The moving party has the burden of showing the absence of disputed material facts by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion.   FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   A fact is material if it may affect the outcome of the case as determined by substantive law, such that "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   "In determining whether summary judgment is appropriate, [the Court will] resolve all ambiguities and draw all reasonable inferences against the moving party." Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

To avoid summary judgment, a non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Carey v. Crescenzi, 923 F.2d 18, 19 (2d Cir. 1991) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)) (internal quotation marks omitted).   A non-moving party must support such assertions by evidence showing the existence of a genuine issue of material

---

[4]   All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

fact.  See id.  "When no rational jury could find in favor of the non-moving party because the evidence to support is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper."  Gallo v. Prudential Services, Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude.  See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally," . . . and that such submissions must be read to raise the strongest arguments that they "suggest," . . . .  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . . or arguments that the submissions themselves do not "suggest," . . . that we should not "excuse frivolous or vexatious filings by pro se litigants," . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

Id. (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).


### 2. N.D.N.Y Local Rule 7.1(a)(3)

Local Rule 7.1(a)(3) requires a party moving for summary judgment to file and serve a Statement of Material Facts.  See N.D.N.Y. L.R.  7.1(a)(3).  "The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue."  Id.  The opposing party is required to file

8

a response to the Statement of Material facts "admitting and/or denying each of the movant's assertions in matching numbered paragraphs." Id. "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis omitted).

Defendants argue that because plaintiff has failed to file a response to their Statement of Material Facts, the facts set forth therein must be deemed admitted. See Dkt. No. 52 ("Def. Reply") at 4-5. Thus, defendants contend that "[g]iven the dispositive nature of those facts, plaintiff has clearly failed to raise any genuine, triable question of relevant fact as to the claims covered by defendants' motion . . . and those claims should be dismissed." Id. at 5. The undersigned is not required to "perform an independent review of the record to find proof of a factual dispute." Prestopnik v. Whelan, 253 F. Supp 2d 369, 371 (N.D.N.Y. 2003) (concluding that the "plaintiff's suggestion that the transcript and videotape of the [incident] be reviewed to identify support for her Statement of Material Facts Not in Dispute does not cure her failure to comply with Rule 7.1(a)(3)."). Although the defendant argues, and the Local Rules provide, that the Court shall deem admitted any facts the nonmoving party fails to "specifically controvert," pro se plaintiffs are afforded special solicitude in this District and within the Second Circuit. N.D.N.Y. L.R. 7.1(a)(3); Def. Reply at 4-5; see subsection II.A. supra. Accordingly, in deference to plaintiff's pro se status, the Court will independently review the record when evaluating defendants' Motion for Summary Judgment, and "treat plaintiff's opposition as a response to" defendants' Statement of Material Facts. Johnson v. Lew, No. 1:13-CV-1072 (GTS/CFH), 2017 WL 3822047, at *2 (N.D.N.Y. Aug. 30, 2017) ("Out of special solicitude to Plaintiff as

9

a <u>pro se</u> civil rights litigant, however, the Court will treat his opposition as a response to Defendant's Rule 7.1 Statement, carefully reviewing it for any record-supported disputation of Defendant's Rule 7.1 Statement."); <u>see</u> <u>Perry v. Ogdensburg Corr. Facility</u>, No. 9:10-CV-1033 (LEK/TWD), 2016 WL 3004658, at *1 (N.D.N.Y. May 24, 2016) (determining that "although [p]laintiff failed to respond to the statement of material facts filed by [d]efendants as required under Local Rule 7.1(a)(3), the Court would invoke its discretion to review the entire record when evaluating the parties' respective Motions for summary judgment.").

## B. Exhaustion

As a threshold matter, defendants argue that plaintiff has failed to exhaust his administrative remedies. <u>See</u> Dkt. No. 48-17 ("Def. Mem. of Law") at 6-13. Plaintiff contends that he filed a grievance concerning the September 10, 2015 incident while housed at Marcy, but "they denied [his] grievance saying that [he] couldn't file[ ] a grievance at Marcy because the incident didn't happen there[.]". Dkt. No. 51 ("Pl. Opp.") at 5-6. It is undisputed that on September 11, 2015, plaintiff was transferred to Marcy where he remained until February 4, 2016. Dkt. No. 48-1 ¶¶ 141, 142. Defendants contend that during that time period, plaintiff did not file any grievances to the Marcy Inmate Grievance Resolution Committee ("IGRC") related to claims against Supt. Hallenbeck or C.O. Prue, nor did send such grievances to the Hale Creek IGRC. Id. ¶¶ 144, 145.

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any

administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration.  See Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 548 U.S. 81, 82 (2006).  The exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter, 534 U.S. at 532.  Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as monetary damages.  Id. at 524.  To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated.  See Jones v. Bock, 549 U.S. 199, 218 (2007) (internal citation omitted).

Although the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply."  Ruggiero v. Cty. of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citation omitted).  The Supreme Court recently held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, __ U.S. __,136 S. Ct. 1850, 1862 (2016).  Thus, the "special circumstances" exception in Hemphill v. New York, 680 F.3d 680, 686 (2d Cir. 2004) is no longer consistent with the statutory requirements of the PLRA.  Williams v. Priatno, 829 F.3d 118, 123 (2d Cir. 2016).[5]

Although Ross eliminates the "special circumstances" exception, courts must still

---

[5] In Williams v. Priatno, the Second Circuit debated Ross's effect on Hemphill's estoppel exception.  See Williams, 829 F.3d at 123.  The Williams Court stated that "Ross largely supplants our Hemphill inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate."  Id. (citing Ross, 136 S. Ct. at 1858-59).

consider the PLRA's "textual exception to mandatory exhaustion." Ross, 136 S. Ct. at 1858.  Under this exception, courts must determine whether administrative remedies were "available" to a prisoner.  Id.  The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738 (2001)).  "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id.  Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

### 1. Did Plaintiff Exhaust his Administrative Remedies?[6]

In support of their motion, defendants have proffered the declarations of Inmate Grievance Program Supervisor ("IGPS") Gregory Wesley (Hale Creek), IGPS Erin Pfendler

---

[6] First, the inmate must file a complaint with an inmate grievance program ("IGP") clerk within twenty-one days of the alleged incident.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a)(1).  An IGP representative has sixteen calendar days to informally resolve the issue. Id. § 701.5(b)(1).  If no informal resolution occurs, the IGRC must hold a hearing within sixteen days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. Id. §§ 701.5(b)(2)(i)-(ii).  If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. Id. § 701.5(c)(1).  If the superintendent's determination is unfavorable, the inmate may appeal to CORC within seven days after receipt of the superintendent's determination. Id. §§ 701.5(d)(i)-(ii).  CORC must review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty (30) calendar days from the time the appeal was received." Id. § 701.5(d)(3)(ii).  Parties do not dispute that at all relevant times, DOCCS had in place a three-step inmate grievance program.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5.

(Marcy), and Assistant Director of the DOCCS Inmate Grievance Program Rachael Seguin. See Dkt. Nos. 48-4 ("Wesley Decl."); 48-6 ("Pfendler Decl."); 48-8 ("Seguin Decl.").  Both IGPS Wesley and IGPS Pfendler declared that plaintiff did not file any grievances (1) alleging Supt. Hallenbeck or C.O. Prue failed to protect him from an attack by another inmate; (2) concerning an attack on him by another inmate; or (3) regarding alleged threats against him by another inmate.  See Wesley Decl. ¶ 20; Pfendler Decl. ¶ 20.  Moreover, Ms. Seguin declared that plaintiff never filed an appeal to CORC for any grievances he filed while housed at either Hale Creek or Marcy.  See Seguin Decl. ¶ 20.  Plaintiff has not proffered any evidence that he filed a grievance relating to the September 10, 2015 incident, or otherwise exhausted his administrative remedies.  Although he alleges that he filed a grievance at Marcy, plaintiff does not state when he filed such grievance or whether that grievance contained allegations against Supt. Hallenbeck and C.O. Prue.  See Pl. Opp. at 5-6.  Further, plaintiff has not provided a copy of the alleged grievance or the Marcy IGRC's denial of that grievance.  See Smith v. Kelly, 985 F. Supp. 2d 275, 189 (N.D.N.Y. 2013) (granting the defendants' motion for summary judgment on the issue of exhaustion where plaintiff failed to "identify the name of the 'IGRC supervisor' who purportedly told him that a new prisoner does not file a grievance at Auburn C.F. if it pertains to the prisoner's previous facility, [and failed to] specify the date, means or location of this purported communication.").  Plaintiff testified that he was familiar with the grievance process and had access to grievance offices at both facilities.  See Pl. Dep. at 15-17.  Moreover, plaintiff stated that he had access to Directive 4040 – the DOCCS directive detailing the inmate grievance program – which states that a "complaint may only

be filed at the facility where the inmate is housed *even if it pertains to another facility*." Dkt. Nos. 48-5 at 7, 48-7 at 7 (emphasis added).  Thus, plaintiff's conclusory allegation that the Marcy IGRC denied his grievance will not suffice to withstand summary judgment.  <u>See Khudan v. Lee</u>, No. 12-CV-8147(RJS), 2015 WL 5544316, at *6 (S.D.N.Y. Sept. 17, 2015) ("Plaintiff's accusations, which 'stand alone' and are 'unsupported,' are insufficient to withstand summary judgment.") (quoting <u>Bolton v. City of New York</u>, No. 13-CV-5749(RJS), 2015 WL 1822008, at *2 (S.D.N.Y. Apr. 20, 2015)).

Moreover, plaintiff's transfer from Hale Creek to Marcy does not excuse his failure to exhaust, as the grievance process is identical in all New York State-run facilities.  <u>See Hartry v. Cnty. of Suffolk</u>, 755 F. Supp. 2d 422, 434 (E.D.N.Y. 2010) ("[S]ome courts [ ] have found that transfer within correctional facilities governed by the same governmental agency will not excuse exhaustion, regardless of whether the inmate had an opportunity to pursue the remedy while at the facility where the claim arose.") (collecting cases); <u>Dabney v. Pegano</u>, 604 F. App'x 1, 5 (2d Cir. 2015) (summary order) ("As for the transfer to Clinton, even a partial favorable grievance resolution does not excuse failing to exhaust the IGP so long as some remedy remains available.") (internal quotation marks and citation omitted); <u>Corye v. Carr</u>, No. 9:08-CV-46 (LEK/GJD), 2010 WL 396363, at *7 (N.D.N.Y. Jan. 26, 2010) ("[G]enerally, transfer does not excuse the exhaustion requirement."); Wesley Decl.; Pfendler Decl.; <u>see also</u> Dkt. Nos. 48-5, 48-7 (detailing Directive 4040 concerning the Inmate Grievance Program).  Plaintiff has failed to proffer evidence that he filed grievances relating to the September 10, 2015 incident, and his bare assertions that Marcy prison officials denied his grievance are insufficient to render the grievance process

14

unavailable.  Thus, defendants have met their burden of showing that plaintiff has failed to exhaust his administrative remedies.  Accordingly, it is recommended that defendants' Motion for Summary Judgment be granted.


## C. Failure to Protect

Alternatively, defendants move to dismiss on the basis that plaintiff fails to state a prima facie failure to protect claim.  See Def. Mem. of Law at 13-24.   "The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."  Hayes v. New York City Dep't of Corr., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832-33 (1994)).  "[A] state prison guard's deliberate indifference to the consequences of his conduct for those under his control and dependent upon him may support a claim under § 1983."  Morales v. New York State Dep't of Corr., 842 F.2d 27, 30 (2d Cir. 1988).  To state a claim for failure to protect under the Eighth Amendment, a plaintiff must demonstrate that (1) he or she was incarcerated under conditions posing a substantial risk of serious harm; and (2) prison officials acted with deliberate indifference to that risk and the inmate's safety.  See Farmer, 511 U.S. at 836.

As to the first prong, the deprivation must be "sufficiently serious," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991) (internal quotation marks omitted)), and "contemplate[ ] 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Id. (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)).  "A substantial risk of serious harm can be demonstrated where

there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or request by plaintiff to be separated from the attacker." Gilmore v. Rivera, No. 13 Civ. 6955(RWS), 2014 WL 1998227, at *3 (S.D.N.Y. May 14, 2014); see Rivers v. Spinnella, No. 9:09-CV-309 (FJS/RFT), 2010 WL 6428486, at *5 (N.D.N.Y. Nov. 4, 2010) (granting the defendants' motion for summary judgment where "there [were] no specific facts, nor even allegations, that indicate the [d]efendant was aware that [p]laintiff faced a substantial risk of serious harm until the altercation had already started.").

As to the second prong, the plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to the inmate's health and safety. See Farmer, 511 U.S. at 837. The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. The plaintiff must "show that the defendants actually inferred from that disclosure that a substantial risk of serious harm existed." Murray v. Goord, 668 F. Supp. 2d 344, 359 (N.D.N.Y. 2009). Negligence by a prison official is insufficient to amount to a constitutional violation. See Hathaway, 37 F.3d at 66 ("Deliberate indifference requires more than negligence, but less than conduct undertaken for the very purpose of causing harm.").

Defendants rely on Desulma v. City of New York in support of their argument that plaintiff has failed to demonstrate a prima facie failure to protect claim. See Def. Mem. of Law at 16-17. In Desulma, the plaintiff alleged that two inmates made unspecified threats and racial insinuations toward him, and that the defendant prison official witnessed such

threats. <u>Desulma v. City of New York</u>, No. 98 Civ. 2078(RMB)(RLE), 2001 WL 798002, at *1 (S.D.N.Y. July 6, 2001).[7]  The plaintiff claimed that he requested protection from the defendant officer, but was told "to defend himself." <u>Id.</u>  The plaintiff requested protective measures from a second prison official, but his complaints were ignored. <u>Id.</u>  The inmates again began to "bother" plaintiff and told him that he "smell[ed]." <u>Id.</u>  Later, the plaintiff submitted changes to his deposition transcript wherein he claimed that the inmates stated, "kill this negro, get you, we are going to get you stinky." <u>Id.</u>  The inmates then "slashed [the plaintiff's] face with a weapon, leaving a permanent scar." <u>Id.</u>  The <u>Desulma</u> Court found that the plaintiff failed to establish either prong of the failure to protect analysis.

As to the first prong — whether plaintiff established that he was incarcerated under conditions posing a substantial risk of serious harm — the Court held that the plaintiff failed to demonstrate that "risk he faced was substantial," and, that to the extent that such risk existed, the plaintiff failed to show that it "was one of serious harm." <u>Desulma</u>, 2001 WL 798002, 1   at *6.  The Court noted that the plaintiff had no prior altercations with the inmates who had attacked him, and that he testified that he had never complained about them or requested separation from them before. <u>Id.</u>  The Court also concluded that the inmates' statements that the plaintiff "was going to pay a price" and that "he smell[ed]" did not establish that the inmates posed a substantial threat to the plaintiff because "verbal statements alone do not indicate a substantial threat of serious harm." <u>Id.</u> at *7.  The Court

---

[7] The procedural history of this case is not available on Westlaw.  However, the docket view for this case, which is available on Westlaw, states that on December 11, 2001, "[t]he Court adopts Mag. Judge Ellis' Report and Recommendation, recommending that deft's motion for summary judgment be granted, in its entirety."  A copy of this portion of the docket will be provided to both parties.

also discredited the revision of the plaintiff's deposition transcript, stating that "although [the plaintiff] changed his testimony to reflect that the inmates had actually threatened him with a knife, that faction alone would not be enough to establish a substantial risk." Id.

As to the second prong — whether the plaintiff established that the defendants acted with the necessary state of mind — the Desulma Court found that although "the record supports a conclusion that [the defendant] was aware that [the plaintiff] feared his attackers because [the plaintiff] requested protective measures . . . and because [the defendant] witnessed the verbal interaction," given the lack of prior history between the parties and the nature of the verbal threats, the defendant "had no reason to infer the existence of a threat of harm, much less a life-threatening danger." Desulma, 2001 WL 798002, at *7. The Court held that the record contained no evidence demonstrating that the defendant "deliberately disregarded" the plaintiff's safety, or otherwise had an opportunity to intervene in the attack. Id. At best, the defendant's conduct was negligent, which is not a culpable mental state for liability. Id. Thus, the Desulma Court recommended that the defendant's motion for summary judgment be granted. Id. at *8.

Here, as in Desulma, plaintiff contends that inmate Moore threatened and harassed him on one occasion in the inmate cafeteria on September 10, 2015. See Sec. Am. Compl. at 3. Plaintiff's claims in his second amended complaint that on September 10, 2015 inmate Moore threatened to cut him, see id., directly contradict plaintiff's sworn deposition testimony, as well as plaintiff's testimony at his Tier III disciplinary hearing. As defendants note, plaintiff testified as to the events of the September 10, 2015 lunch hour:

> Q:    What was the fight about with Inmate Moore in cafeteria
>       on September 10th of 2015?

18

> A:    I was talking to this other inmate named Robinson, and
> we was talking about girls and stuff like that.  So
> [i]nmate Moore jumped in our conversation and told me
> to shut up.  Shut the F. up. And called me a pussy.  So
> I called him a pussy back.  Then he was like, we're
> going to see who's a pussy when we get back to the
> dorm.
>
> Q:    Did he say anything else at that time?
>
> A:    Nope.
>
> Q:    That's all he said?
>
> A:    That's all he said.

Dkt. No. 48-16 ("Pl. Dep.") at 40-41.  Such statements are consistent with plaintiff's

testimony at the September 16, 2015 Tier III disciplinary hearing, wherein plaintiff testified

that, inmate Moore "jumped in on [he and inmate Robinson's] conversation.  I told him to

mind his business.  He called me a pussy.  I called him a pussy back.  And he said you

going to see who a pussy when we get back to the dorms." Dkt. No. 48-14 at 6.  Moreover,

plaintiff's signed "Free Will Statement" does not mention that inmate Moore threatened to

cut him with a knife.  See Dkt. No. 48-12 at 10.  Irrespective of the inconsistencies in

plaintiff's narrative, "verbal statements alone do not indicate a substantial threat of serious

harm," and plaintiff's allegation that inmate Moore threatened to cut him, if credited, does

not by itself establish a substantial risk.  Desulma, 2001 WL 798002, at *7.

As in Desulma, plaintiff had no prior altercations with inmate Moore, see Desulma,

2001 WL 798002, at *6; Pl. Dep. at 29, 41; in fact, the record indicates that plaintiff and

inmate Moore resided in the same housing unit from June 2015 until September 2015,

attended the same ASAT program for two to three months without an altercation, and

generally "got along."   Pl. Dep. at 41, 42; see Peterson v. Johnson, No. 9:10-CV-0026(FJS/DEP), 2011 WL 7640124, at *11 (N.D.N.Y. Aug. 3, 2011) (dismissing the plaintiff's failure to protect claim where "plaintiff does not allege facts suggesting that there was any prior history between him and inmate Green, or that there was any other reason for defendant to know that Green posed a threat to plaintiff's safety.").   Plaintiff testified that he was "surprise[d]" that inmate Moore attacked him, and that he entered the bathroom after the "situation" in the inmate cafeteria because he thought that inmate Moore "wanted to talk to [him] . . . [but] he just . . . pulled out a razor and cut [him]."   Id. at 42.   Plaintiff testified that he would not have entered the bathroom alone had he thought inmate Moore was going to attack him.   Id. at 43.   Moreover, after the assault, plaintiff went to his ASAT class, moved his seat to sit next to inmate Moore, and on three separate occasions failed to tell DOCCS officials that he inmate Moore had cut him with a razor when questioned about the cut on his neck.   See Dkt. No. 48-13 at 2-5.   Thus, as plaintiff readily admits that he, on his own volition, entered the restroom with inmate Moore after the lunchtime argument, and that he did so under the belief that the two men were "going to talk it out," Pl. Dep. at 41-43, the record does not support a conclusion that plaintiff was in a "condition of urgency [ ] that may produce death, degeneration, or extreme pain" under the first prong of the analysis.   Hathaway, 37 F.3d at 66 (internal quotation marks and citation omitted).

Moreover, even assuming that plaintiff had established that he was incarcerated under conditions posing a substantial risk of serious harm, he has failed to demonstrate that Supt. Hallenbeck or C.O. Prue actually knew of and disregarded an excessive risk of harm to his health and safety.   See Farmer, 511 U.S. at 837.   Plaintiff's conclusory

allegations that he informed Supt. Hallenbeck and C.O. Prue "numerous times" that inmate Moore threatened and harassed him, and that inmate Moore threatened to "cut" him are unsupported by the record.  <u>See</u> Sec. Am. Compl. at 3.

As a threshold matter, defendants argue that Supt. Hallenbeck had no personal involvement in the events at issue in this lawsuit.  <u>See</u> Def. Mem. of Law at 24-25.  The undersigned agrees.  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994) (quoting <u>Moffitt v. Town of Brookfield</u>, 950 F.2d 880, 885 (2d Cir. 1991)).  Assertions of personal involvement that are merely speculative are insufficient to establish a triable issue of fact.  <u>See</u> <u>e.g.</u>, <u>Brown v. Artus</u>, 647 F. Supp. 2d 190, 200 (N.D.N.Y. 2009). Plaintiff testified that he only spoke with Supt. Hallenbeck one time approximately two weeks after he arrived at the facility during inmate orientation.  <u>See</u> Pl. Dep. at 23-24.[8]  On that date, Supt. Hallenbeck gave a speech to a group of inmates in the ASAT housing unit, and plaintiff did not have a personal conversation with him.  <u>Id.</u> at 24. In fact, plaintiff noted that he had never had a one-on-one persona conversation with Supt. Hallenbeck.  <u>Id.</u>   The record is clear that the only interaction plaintiff had with Supt. Hallenbeck on September 10, 2015 is that he observed Supt. Hallenbeck standing by the mess hall.  <u>Id.</u> at 61.  Plaintiff did not approach Supt. Hallenbeck, nor did he attempt to engage him in conversation concerning inmate Moore's alleged threats. <u>See id.</u> at 61-62.

---

[8] Plaintiff initially testified that he told Supt. Hallenbeck that inmate Moore threatened him and/or threatened to cut him on September 10, 2015.  <u>See</u> Pl. Dep. at 24-27.  Later on in the deposition, plaintiff clarified that he did not speak to Supt. Hallenbeck on September 10, 2015 concerning any threats by inmate Moore; instead, plaintiff told non-party Sgt. Soto to inform Supt. Hallenbeck of the incident.  <u>See</u> Pl. Dep. at 27, 61-62.

Further, there is no indication that non-party Sgt. Soto ever spoke with Supt. Hallenbeck, and Sgt. Soto never informed plaintiff that he spoke with Supt. Hallenbeck on his behalf. See id. at 60; Dkt. No. 48-2 ("Hallenbeck Decl.") ¶ 7 ("At no time prior to the occurrence of the September 10, 2015 altercation . . . , or at any time since, has Sgt. Soto, (or anyone else) ever informed me that plaintiff told him (or anyone else) of any threat made to plaintiff, or danger posed to [plaintiff], by inmate Moore."). Supt. Hallenbeck declared that

> [a]t no time prior to the . . . September 10, 2015 altercation between inmate [ ] Moore and plaintiff. . . was [he] ever told, or otherwise made aware of any threat(s) made to plaintiff by inmate [ ] Moore, of any danger that inmate Moore may have posed to plaintiff, or of any tension, hostility or conflict between inmate [ ] Moore and plaintiff.

Hallenbeck Decl. ¶ 8. Supt. Hallenbeck did not witness the assault as he was not present in the inmate bathroom, or anywhere in the C-2 housing unit, at the time of the attack. Id. ¶ 4. Thus, the record is clear that Supt. Hallenbeck was not aware of the lunch hour conversation between plaintiff and inmate Moore, and, therefore, could not have inferred that such conversation would result in an assault. See Farmer, 511 U.S. at 837. Therefore, plaintiff has failed to establish that Supt. Hallenbeck was personally involved in his failure to protect claim.

As to C.O. Prue, affording plaintiff special solicitude, plaintiff contends that after returning to his dorm from the inmate cafeteria, he informed C.O. Prue that inmate Moore threatened him. See Pl. Dep. at 36. As in Desulma, although C.O. Prue may have been aware that inmate Moore threatened and/or threatened to cut plaintiff,[9] given the lack of

---

[9] C.O. Prue disputes that plaintiff informed him that inmate Moore threatened him during the lunch hour. See Dkt. No. 48-3 ("Prue Decl.") ¶ 21.

prior history between the parties, and the nature of the verbal threats, C.O. Prue "had no reason to infer the existence of a threat of harm, much less a life-threatening danger." Desulma, 2001 WL 798002, at *7.  C.O. Prue declared that prior to the September 2015 altercation, he had "never overheard or was aware of any verbal confrontation between inmate Moore and plaintiff; never saw or knew of any physical confrontation between inmate Moore and plaintiff; and never heard or was aware of any threats communicated to plaintiff by inmate Moore."  Prue Decl. ¶ 24.  Plaintiff's testimony that after informing C.O. Prue of inmate Moore's threat, he returned to his cube "feeling nervous and scared" is contradicted by the record, which demonstrates that soon after the alleged conversation with C.O. Prue, plaintiff voluntarily left his cell to enter the restroom with inmate Moore under the belief that they were going to talk.  See Pl. Dep. at 41-43. Thus, crediting plaintiff's allegations, although C.O. Prue may have had knowledge of inmate Moore's threats, there is no indication that C.O. Prue "disregard[ed] that risk by failing to take reasonable measures to abate the harm." Hayes v. New York City Dep't. of Corr., 84 F.3d 614, 620 (2d Cir. 1996).

To the extent that plaintiff contends that C.O. Prue failed to intervene in the September 10, 2015 altercation, this argument must fail.  To establish liability under a failure to intervene theory, "a plaintiff must prove the use of excessive force by someone other than the individual and that the defendant under consideration: [(]1) possessed actual knowledge of the use by another of excessive force; [(]2) had a realistic opportunity to intervene and prevent the harm from occurring; and [(]3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive

23

force." <u>Cicio v. Lamora</u>, No. 09:CV-431, 2010 WL 1063875, at *8 (N.D.N.Y. Feb. 24, 2010) (citing <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 72 (2d Cir.2001). As defendants point out, the record is clear that C.O. Prue did not have a realistic opportunity to intervene and prevent inmate Moore from cutting plaintiff with a razor. <u>See</u> Def. Mem. of Law at 24. C.O. Prue was not present in the bathroom when the September 10, 2015 altercation occurred. Prue Decl. ¶ 16. Although C.O. Prue does not recall where he was exactly when the assault occurred, he declared that he "was definitely on/in said housing unit at that time." <u>Id.</u> ¶ 10.

Insofar as plaintiff contends that C.O. Prue "wasn't on his assigned post which suppose [sic] to be at the desk," Pl. Opp. at 4-5, plaintiff does not proffer evidence of DOCCS rules or regulations that require a corrections officer to be seated at the officer's desk in their assigned location. <u>See</u> Def. Reply at 10-11. In fact, C.O. Prue declared that his "post" was the C-2 housing unit, and while on duty, an officer is required to undertake periodic rounds and move freely around the unit. Prue Decl. ¶¶ 12, 16. Moreover, even if C.O. Prue had been sitting at the officer's desk in the main room of the C-2 housing unit, he would not have been able to intervene in the altercation because "someone sitting/stationed at the officer's desk in the main common room would not be able to see more into said restroom due to the viewing angle from the desk." Prue Decl. ¶ 13. C.O. Prue stated that the view from the desk into the inmate restroom is obstructed by the restroom's exterior wall. <u>Id.</u> To the extent that C.O. Prue was present in the television room, his view into the restroom still would have been obstructed. <u>See id.</u> at 14. Moreover, plaintiff testified that the assault occurred within three seconds of him walking

24

into the bathroom, thereby preventing C.O. Prue from having a "realistic opportunity" to intervene in the assault. See Cicio, 2010 WL 1063875, at *8; Pl. Dep. at 43.  Therefore, insofar as plaintiff contends that C.O. Prue failed to intervene in the September 10, 2015 altercation, such claim must fail.

Accordingly, as plaintiff fails to demonstrate a prima facie failure to protect claim, it is recommended that defendants' motion be granted.

### D. Qualified Immunity

Defendants argue that, even if plaintiff's Eighth Amendment claim is substantiated, they are entitled to qualified immunity.  Def. Mem. of Law at 26-28.  Qualified immunity shields public officials from being sued for conduct undertaken in the course of their duties so long as that conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (internal quotation marks and citation omitted); Eng v. Coughlin, 858 F.2d 889, 895 (2d Cir. 1988).  However, even if the constitutional privileges "are so clearly defined that a reasonable public official would know that his actions might violate those rights, qualified . . . immunity might still be available . . . if it was objectively reasonable for the public official to believe that his acts did not violate those rights." Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted).  A court must first determine whether, if the plaintiff's allegations are accepted as true, there would be a constitutional violation. See Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court

25

proceed to determine whether the constitutional rights were clearly established at the time of the alleged violation. Aiken v. Nixon, 236 F. Supp. 2d 211, 230 (N.D.N.Y. 2002).

Here, plaintiff has not established a constitutional violation to satisfy the first prong of the qualified immunity test. See subsection II.C. supra, at 14-24. Because there is no constitutional violation, the undersigned does not reach whether plaintiff's constitutional rights were clearly established at the time of the alleged violation. See Aiken, 236 F. Supp. 2d at 230. Accordingly, it is recommended that defendants' motion on this ground be granted.


### III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby:

**RECOMMENDED**, that defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 48) be **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's second amended complaint (Dkt. No. 17) be **DISMISSED** in its entirety, with prejudice; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Secretary of Health and Human Servs.</u>, 892

F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[10]

Dated: July 3, 2018
Albany, New York

*Christian F. Hummel*

Christian F. Hummel
U.S. Magistrate Judge

_____

[10] If you are proceeding <u>pro se</u> and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(C).